```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )
v.                            )    Criminal No. 08-10309-MLW
                              )
MICHELLE ROBINSON             )
```

GOVERNMENT MEMORANDUM IN SUPPORT OF
FED. RULE CRIM. PRO. 11 (c)(1)(C)
PLEA AGREEMENT

The United States of America, by and through United States Attorney Michael J. Sullivan and Assistant United States Attorney James P. Dowden, hereby files this memorandum in response to the Court's February 18, 2009 Order requiring the government to address why the sentence proposed by the parties in the above-captioned matter is justified. For the reasons set forth in more detail below, the parties' agreed-upon sentence, which includes a six month period of incarceration, a six month period of home detention, and a three year period of supervised release, is a reasonable sentence that is "sufficient but not greater than necessary" to effectuate the purposes of sentencing. See 18 U.S.C. § 3553 (a)(2). Moreover, the sentence sends the important message to extortion victims that the government takes this crime (and their rights to privacy and dignity) seriously, and accordingly encourages extortion victims to report such criminal activity and not to succumb to the demands of extortionists, or alternatively resort to self-help.

1

I.

The Defendant Michelle Robinson ("Robinson") stands charged in a three count indictment stemming from a series of extortionate threats she made to a local business person ("BP") with whom she had engaged in a sex-for-fee relationship over some period of time. As detailed in the affidavit in support of the criminal complaint originally charged in this matter, Robinson demanded over half-a-million dollars (and actually received close to $300,000) from BP. In particular, Robinson threatened that if BP did not pay the increasing amounts of money that she demanded from him, she would publically expose her relationship with him to a member of the media whom she claimed offered her substantial amounts of money for this information.

Robinson's demands in this case escalated over a period of days.  Indeed, after her initial demands, BP paid Robinson $80,000 in cash.  Robinson then demanded more money ($300,000), and BP paid her an additional $200,000 in cash.  Shortly thereafter, Robinson demanded an additional $300,000.  Apparently concerned that Robinson's increasing demands for money would not stop (and fearing that Robinson may have been working in some organized fashion with others), BP contacted law enforcement. After corroborating these events (including Robinson's escalating demands for money) through recorded telephone calls, interviews with witnesses, and bank records, the FBI arrested Robinson when she attempted to pick-up

the additional $300,000 that she demanded from BP.

Robinson was then named in a criminal complaint charging her with making threats to injure the reputation of another in violation of 18 U.S.C. §875(d)[1] - an offense that carries a statutory two year maximum term of imprisonment and a maximum one year period of supervised release. Robinson was subsequently indicted in the instant matter and charged with violating 18 U.S.C. §875(d) and two counts of wire fraud in violation of 18 U.S.C. § 1343 (counts two and three of the now pending indictment). These charges are predicated on the interstate wiring of funds that was necessary to obtain the cash that Robinson demanded as part of her scheme. Significantly, these wire fraud charges provide for a three year period of supervised release - a period significantly longer than the one year maximum period of supervised release provided for under the Threats in an Interstate Communication charge.

On January 9, 2009, pursuant to a Fed. R. Crim Pro. 11 (c)(1)(C) plea agreement, Robinson agreed to plead guilty to the wire fraud charges in the instant indictment. As part of that plea

---

[1] In relevant part, the statute provides:

> Whoever, with intent to extort from any person ... any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee ... shall be fined under this title or imprisoned not more than two years, or both.

agreement, the parties have agreed to a sentence that contains several critical components - components that collectively the government believes are appropriate and particularly tailored to the unique facts and circumstances of the defendant in this case and the criminal conduct in which she engaged.  These components include the following: (1) a six month period of incarceration to be followed by a six month period of home detention; (2) restitution in the amount of $280,000; (3) a $200 mandatory special assessment; and (4) a three year period of supervised release to include standard conditions of supervised release and a special condition that Robinson not publicize the name of the victim in this case while under a criminal sentence relating to this case, including during the term of her supervised release.

## II.

To be sure, the incarcerative period of the parties' agreed-upon sentence in this matter varies significantly from the Advisory Sentencing Guidelines range as calculated by the United States Probation Office.  And, the government does not here request that the Court depart from the Advisory Sentencing Guidelines range pursuant to U.S.S.G. § 6B1.2(c)(2)(A).  Rather, the government maintains that the totality of the components of the agreed-upon sentence - including the brief period of incarceration and the extended period of supervised release - properly (I) accounts for the defendant's criminal culpability in this matter, (ii) provides

the defendant with an extended period of supervision during which time she will have access to the services of the United States Probation Office to direct her to law-abiding employment, and (iii) helps ensure that the defendant will not cause the very harm that she threatened to the victim.  See 18 U.S.C. § 3553(a).  Thus, the government believes that the agreed-upon sentence provides for sufficient punishment to advance the important federal interest in preventing and deterring extortionate conduct of the kind engaged in by the defendant, while also encouraging extortion victims to report crimes of this nature.  See 18 U.S.C. § 3553(a)(2).  In these circumstances, the government believes that the parties' agreed-upon sentence is reasonable.

A.

The United States Supreme Court has made clear in its recent sentencing decisions that, while the Advisory Sentencing Guidelines are generally a "rough approximation" of a defendant's culpability, sentencing courts are entrusted with the authority to narrowly tailor a criminal sentence to reflect the individual offender's characteristics, as well as the nature and circumstances of the offense.  Kimbrough v. United States, 128 S.Ct. 558, 574 (2009); see also generally Rita v. United States, 551 U.S. 338 (2007).  And, in all cases the sentence imposed must be reasonable.  Kimbrough, 128 U.S. at 576.  In the mine run of cases (and in recognition of the need to avoid unwarranted sentence disparities)

the government commonly argues that the Advisory Sentencing Guideline's range provides for a reasonable sentence. The government, however, has argued, and will continue to argue, that in some factual settings the Advisory Sentencing Guidelines do not provide for a sentence that is sufficient but not greater then necessary to effectuate the goals of the Sentencing Reform Act. This is one of those cases. Here, the government believes that the agreed-upon sentence in the Fed. R. Crim. Pro 11(c)(1)(C) plea agreement – which includes several critical components that are tailored to the circumstances of this case - fashions a more reasonable sentence.

The core of Robinson's conduct relates to her extortionate threats to injure the reputation of the victim by falsely claiming that a member of the media had agreed to pay her significant sums of money to reveal her relationship with him. Significantly, the federal statutory prohibition that most squarely addresses this conduct provides for a maximum two year period of incarceration for this offense. See 18 U.S.C. §875(d). That is the principal reason why the government charged the threats in interstate communication charge in this matter. That being said, in the government's view, a reasonable and narrowly tailored sentence that reflects this offender and this conduct requires an extended period of supervised release – a period of release not available under the interstate threats charge. As discussed in more detail below, such

an extended period of supervised release is necessary both to provide this defendant with needed supervision and to advance the important interests of protecting the statutory rights of the victim in this matter.  In these circumstances, the wire fraud charges at issue provide for a maximum term of three years supervised release, which forms an important component of the total sentence that the government believes is reasonable.  While the government chose not to pursue the maximum period of incarceration permitted by statute, it has pursued the maximum term of supervised release provided for by the statute which more broadly addresses the fraudulent aspect of Robinson's crime.  In the government's view, these components collectively provide for a reasonable sentence that is sufficient but not greater than necessary to effectuate the purposes of sentencing in this case. Kimbrough, 128 U.S. at 576.

B.

The government believes that a not insignificant consideration in fashioning an appropriate sentence in this case is the interests of the victim.  While the victim appears to have engaged in wrongful conduct which is punishable under state law, he is also the victim of a federal crime.  Accordingly, he has certain statutory rights under the Crime Victim's Rights Act which compels the government to use its "best efforts" to ensure that he be treated with "respect for [his] dignity and privacy," and that he

be "reasonably protected from the [defendant]." See 18 U.S.C. §§ 3771 (a)(1),(8), and (c)(1).

Here, the victim's interest in avoiding a trial in which his identity would in all likelihood be revealed is a factor which the government has weighed heavily in calculating its recommended sentence. See id. Moreover, preventing the very harm that Robinson threatened to cause the victim by extending the period of Robinson's supervised release to a period of three years during which time she may not publicize the name of the victim (as made possible by the wire fraud charges) was also an important consideration. See 18 U.S.C. 3553 (a)(1); see also United States v. Smith, 436 F.3d 307, 311 (finding condition of supervised release which limited defendant's right of association was sufficiently related to one or more of the permissible goals of sentencing and supervised release); United States v. Brown, 235 F.3d 2, 6 (1st Cir. 2000) (condition of supervised release must be sufficiently related to goals of supervised release). At bottom, the government believes that a sentence that is not tailored to properly reflect the circumstances of the victim's right to privacy under the Crime Victims Right Act has the very real and tangible consequence of causing the very harm that Robinson sought to inflict on him -- a harm that Congress has expressly sought to prevent by criminalizing this type of extortionate conduct. See 18 U.S.C. § 875 (d).

C.

The parties' agreed-upon sentence also properly accounts for the individual characteristics of this defendant.  See 18 U.S.C. §3553(a)(1).  As outlined in much greater detail in the Presentence Report, this defendant's life has been marked by considerable hardship.  Without disclosing matters set forth in the Presentence Report (which is, as is routine, a non-public document, based on the defendant's privacy interests), it is fair to say that significant emotional and economic hardships are by no means unusual among persons who resort to prostitution, a dangerous and illegal profession, for their livelihoods. The agreed-upon sentence is driven, in part, by an expectation that Robinson could significantly benefit from the close supervision of the United States Probation Office during the agreed-upon three year period of supervised release.  During such period of time, Robinson will be required to regularly report to probation, and she can receive assistance in obtaining job training and lawful regular employment. Given the history and characteristics of this defendant, such assistance appears necessary and appropriate towards putting Robinson on the path towards pursuing a law abiding future life. See 18 U.S.C. §3553 (a)(2)(D).

D.

Finally, and importantly, the government believes that the parties' agreed-upon sentence provides for adequate deterrence for both this defendant and other potential offenders. See 18 U.S.C. §§3553(a)(2)(B),(C). As for specific deterrence, the facts of this case indicate that the agreed-upon sentence has sent a clear message to Robinson that her extortionate demands have serious consequences. For an individual who previously has never served any time in jail, Robinson's six month term of imprisonment and further period of home confinement sends a strong message that her conduct has significant consequences. And, the requirement that she make on-going efforts to make restitution payments sends the continuing message to Robinson that she cannot simply walk away from responsibility for her actions. Moreover, the extended period of supervised release called for under the parties' agreed-upon sentence sends the important message that if Robinson fails to live a law-abiding life during her three-year period of supervised release, she will be subject to even further and greater deprivations of liberty, including re-incarceration.

As for general deterrence, the government believes that the parties' agreed-upon sentence sends an appropriate message to those who engage in extortionate conduct that their crimes will not be tolerated and that they are subject to significant deprivations of personal liberty when they engage in such conduct. Indeed, the

proposed sentence sends the message that even in circumstances where the extortion victim himself has engaged in inappropriate (and even illegal) behavior, the government will pursue (and seek jail time) for the separate and distinct crime of preying on the fear of victims to obtain money, or property.

Equally important for the purposes of promoting general deterrence, the agreed-upon sentence sends an unequivocal message to victims of all types of extortionate behavior, namely that the government takes these crimes and the victims' right to privacy seriously.  It encourages victims to report extortionate conduct to the government, rather than simply comply with an extortionate demand out of fear for themselves or their families, or resort to self-help in some form.  Indeed, for a crime in which fear is the perpetrator's most powerful currency, the government believes that the importance of encouraging victims to come forward in spite of such fear cannot be understated.

III.

For these reasons, the government respectfully requests that the Court accept the parties Fed. Rule. Crim. Pro 11(c)(1)(C) plea agreement in this case and impose the recommended sentence.

```
                              Respectfully Submitted,
                              MICHAEL J. SULLIVAN
                              United States Attorney

                        By:
                              /s/ James P. Dowden
                              James P. Dowden
                              Assistant U.S. Attorney
```

Dated: February 19, 2009

**CERTIFICATE OF SERVICE**

    This is to certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 19, 2008.

                                              */s/ James P. Dowden*
                                              JAMES P. DOWDEN
                                              Assistant U.S. Attorney